# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Akin v. Smith*, 2013 IL App (1st) 130441

| | |
|---|---|
| Appellate Court Caption | IMANI AKIN, Petitioner-Appellee, v. ANNIE SMITH, Respondent-Appellant (Michelle Markiewicz-Qualkinbush, Nyota T. Figgs, Magdalena J.Wosczynski and Thaddeus Jones, Individually and as Members of the Municipal Officers Electoral Board for the City of Calumet City; the Municipal Officers Electoral Board for the City of Calumet City; Nyota T. Figgs, as Calumet City Clerk; and David Orr, as the Cook County Clerk, Respondents).–VICTOR F. GREEN, SR., Petitioner-Appellee, v. STEVON GRANT and DEBORAH HAYNES-SHEGOG, Respondents-Appellants (Michelle Markiewicz-Qualkinbush, Nyota T. Figgs, Magdalena J. Wosczynski and Thaddeus Jones, Individually and as Members of the Municipal Officers Electoral Board for the City of Calumet City; the Municipal Officers Electoral Board for the City of Calumet City; Nyota T. Figgs, as Calumet City Clerk; and David Orr, as the Cook County Clerk, Respondents).–HOPE E. ALLEN, Petitioner-Appellee, v. RANDY BARRON, Respondent-Appellant (Michelle Markiewicz-Qualkinbush, Nyota T. Figgs, Magdalena J. Wosczynski and Thaddeus Jones, Individually and as Members of the Municipal Officers Electoral Board for the City of Calumet City; the Municipal Officers Electoral Board for the City of Calumet City; Nyota T. Figgs, as Calumet City Clerk; and David Orr, as the Cook County Clerk, Respondents). |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-0441 |
| Filed | April 25, 2013 |

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The statements of candidacy of petitioners who were seeking municipal offices in a Democratic primary election substantially complied with section 7-10 of the Election Code, notwithstanding the fact that the notarial jurat lacked the language that the candidate was "personally known" by the notary public, since the minor deviation did not render each candidate's oath invalid; therefore, the trial court's reversal of the Electoral Board's decision striking petitioners' names from the ballot was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 2013-COEL-17, 2013-COEL-18, 2013-COEL-19; the Hon. Alfred J. Paul, Judge, presiding. |
| Judgment | Circuit court affirmed; Municipal Officers Electoral Board for the City of Calumet City reversed. |
| Counsel on Appeal | James P. Nally, of James P. Nally, P.C., of Chicago, for appellants.<br><br>Adam W. Lasker, of Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., of Chicago, for appellees. |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion.<br>Justices Quinn and Fitzgerald Smith concurred in the judgment and opinion. |

**OPINION**

¶ 1     This expedited appeal involved the validity of statements of candidacy of petitioners Imani Akin, Victor F. Green, Sr., and Hope E. Allen (Candidates). Candidates sought to run in the Democratic primary held on February 26, 2013, for certain offices of the City of Calumet City. Akin and Allen were candidates for the office of alderman. Green was a candidate for the office of mayor. Respondents-appellants Annie Smith, Stevon Grant, Deborah Haynes-Shegog, and Randy Barron (Objectors) each filed an objection petition,[1]

_____

[1]Annie Smith objected to Imani Akin's statement of candidacy; Stevon Grant and Deborah Haynes-Shegog objected to Victor F. Green, Sr.'s statement of candidacy; and Randy Barron objected to Hope E. Allen's statement of candidacy.

contending that the statement of candidacy was deficient because the notarial jurat did not contain the relevant language "Subscribed and sworn to (or affirmed) before me by [Candidate], *who is to me personally known*." (Emphasis added.)

¶ 2    The Municipal Officers Electoral Board for the City of Calumet City (the Electoral Board) sustained the objections finding that each Candidate's statement of candidacy did not comply with section 7-10 of the Election Code (10 ILCS 5/7-10 (West 2010)) because the notarial jurat did not include language stating that the candidate who executed the statement of candidacy in the presence of the certifying officer was "personally known" to the certifying officer. The Electoral Board concluded that each Candidate's nomination papers were deficient as a matter of law and invalid in their entirety. The Electoral Board therefore ordered that Candidates' names would not appear on the ballot for the February 26, 2013 consolidated primary election. Each Candidate petitioned the circuit court of Cook County, and the petitions were consolidated. On February 8, 2013, the circuit court reversed the Electoral Board's decision. On February 15, 2013, Objectors filed their notice of appeal of the circuit court's ruling. This court granted Objector's motion for expedited consideration of this case. On February 28, 2013, we entered an order affirming the judgment of the circuit court of Cook County that reversed the Electoral Board's decision and stated that our opinion would follow.

¶ 3    The issue in this case is whether Candidates' statements of candidacy complied with section 7-10 of the Election Code (10 ILCS 5/7-10 (West 2010)) where the notarial jurats did not include the phrase: "*who is to me personally known*." Our review is *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). "[A]lthough this case comes to us on appeal from the circuit court, we are actually reviewing the Electoral Board's decision ***." *Rita v. Mayden*, 364 Ill. App. 3d 913, 919 (2006). This court is not bound by an administrative agency's interpretation of a statute. *King v. Justice Party*, 284 Ill. App. 3d 886, 888 (1996). However, although we review the statute *de novo*, the Electoral Board's interpretation of the Code is entitled to some deference, as it is the entity charged with interpreting the Election Code. *Rita v. Mayden*, 364 Ill. App. 3d at 919.

¶ 4    Section 7-10 of the Election Code states in pertinent part:

"Form of petition for nomination. The name of no candidate *** shall be printed upon the primary ballot unless a petition for nomination has been filed in his behalf as provided in this Article in substantially the following form:

    We, the undersigned, members of and affiliated with the .... party ***, do hereby petition that the following named person or persons shall be a candidate *** of the .... party for the nomination for *** the office *** hereinafter specified, to be voted for at the primary election to be held on (insert date).

* * *

    I, ...., do hereby certify that I reside at No. .... street, in the .... of ...., county of ...., and State of ....., that I am 18 years of age or older, that I am a citizen of the United States, and that the signatures on this sheet were signed in my presence, and are genuine, and that to the best of my knowledge and belief the persons so signing were at the time of signing the petitions qualified voters of the .... party, and that their respective residences

-3-

are correctly stated, as above set forth.

    \*\*\*

    Subscribed and sworn to before me on (insert date).

    \* \* \*

    \*\*\* Each petition must include as a part thereof, a statement of candidacy for each of the candidates \*\*\*. This statement \*\*\* shall request that the candidate's name be placed upon the official ballot, and *shall be subscribed and sworn to by such candidate before some officer authorized to take acknowledgment of deeds in the State and shall be in substantially the following form*:

Statement of Candidacy

    \* \* \*

    I, ...., being first duly sworn, say that I reside at .... Street in the city (or village) of ...., in the county of ...., State of Illinois; that I am a qualified voter therein and am a qualified primary voter of the .... party; that I am a candidate for nomination (for election in the case of committeeman and delegates and alternate delegates) to the office of .... to be voted upon at the primary election to be held on (insert date); that I am legally qualified (including being the holder of any license that may be an eligibility requirement for the office I seek the nomination for) to hold such office and that I have filed (or I will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act and I hereby request that my name be printed upon the official primary ballot for nomination for (or election to in the case of committeemen and delegates and alternate delegates) such office.

    Signed ......................

    Subscribed and sworn to (or affirmed) before me by ...., *who is to me personally known*, on (insert date).

    Signed ....................

(Official Character)

(Seal, if officer has one.)" (Emphases added.) 10 ILCS 5/7-10 (West 2010).

As noted, the notarization for the petition sheet merely states: "Subscribed to and sworn to before me on (insert date)," while the notarization for the statement of candidacy contains the following form: "Subscribed and sworn to (or affirmed) before me by \*\*\* *who is to me personally known*, on (insert date)." (Emphasis added).

¶ 5    Citing *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 100 (1964), the Electoral Board stated that "[i]n construing statutory language that addresses two distinct matters in the same section and in which matters are treated differently by the legislature, Illinois courts have held that the legislature's intent was that the two matters be addressed in wholly different ways as stated." Objectors now argue that the Electoral Board correctly determined that the statements of candidacy were legally defective and invalid because "[s]ection 7-10 of the Election Code provides form language for two separate and distinct documents used by candidates running as independents for municipal office in Illinois: (1) a petition sheet that individuals use to obtain signatures from voters seeking to nominate a candidate for elective

-4-

office, and (ii) the Statement of Candidacy that candidates use to state their qualifications for their sought elective office and affirmatively declare their desire to accept the nomination." Objectors contend that the difference in the language indicates a legislative intent for "heightened standards in the certification process for Statements of Candidacy."

¶ 6    With respect to the separate notarization forms, our supreme court has explained as follows:

"The general purpose of section 7-10 and related provisions of the Election Code is to provide an orderly procedure whereby qualified persons seeking public office may enter primary elections. The petitions signed by electors and the statement of candidacy sworn to by the prospective candidate are each intended to serve particular purposes in this regard. While their sufficiency must be determined with reference to the particular function each was designed to accomplish, *it was not intended that for all purposes they should be considered separate and apart as if the other did not exist*. To the contrary, section 7-10 provides that nominating petitions shall include a statement of candidacy *'as a part thereof.'* " (Emphases added.) *Lewis v. Dunne*, 63 Ill. 2d 48, 53-54 (1976).

Although the issue in *Lewis v. Dunne* was not relevant to the issue in the present appeal, we cite it only to point out that the two subsections of section 7-10 are not necessarily "two distinct matters" treated differently by the legislature, as Objectors contend.

¶ 7    We first consider whether section 7-10 of the Election Code is mandatory or directory. Citing *O'Connor v. Cook County Officers Electoral Board*, 281 Ill. App. 3d 1108 (1996), and *Madden v. Schumann*, 105 Ill. App. 3d 900 (1982), Candidates contend that this court has acknowledged that section 7-10 of the Election Code contains *both* mandatory elements and directory provisions.

¶ 8    As we have explained:

"Whether a statute is mandatory or directory depends on the legislature's intent, which is ascertained by examining the nature and object of the statute and the consequences which would result from any given construction. [Citation.] On one hand, a statute in the Election Code may generally be given a mandatory construction if it expressly states that failure to act in the manner set out in the statute will void the ballot. [Citation.] On the other, a statute may generally be construed as directory if it simply prescribes the performance of certain acts in a specific manner, and does not expressly state that compliance is essential to the validity of the ballot. [Citation.]. That is, [i]n construing statutory provisions regulating elections the courts generally have tended to hold directory those requirements as to which the legislature has not clearly indicated a contrary intention, particularly where such requirements do not contribute substantially to the integrity of the election process. [Citation.]" (Internal quotation marks omitted.) *Schwallenstecker v. Rull*, 2012 IL App (4th) 120754, ¶ 16.

¶ 9    To the extent that section 7-10 of the Election Code is a mandatory rather than a directory statute, the Illinois Supreme Court has acknowledged that substantial compliance can satisfy mandatory statutory requirements governing statements of candidacy. See *Goodman v. Ward*, 241 Ill. 2d 398, 409-10 (2011) (noting that "[t]he statutory requirements governing statements of candidacy and oaths are mandatory" and that "[i]f a candidate's statement of

candidacy does not *substantially comply* with the statute, the candidate is not entitled to have his or her name appear on the primary ballot" (emphasis added)). This court has also applied the doctrine of substantial compliance to the mandatory provisions of the Election Code. See, *e.g.*, *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 23 ("[s]ubstantial compliance can satisfy a mandatory provision of the Election Code"); see also *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 29 ("Our courts have repeatedly recognized that substantial, rather than strict, compliance is the proper standard by which to evaluate deviations from certain mandatory provisions of the Election Code."); *Jakstas v. Koske*, 352 Ill. App. 3d 861, 864 (2004) ("Substantial compliance can satisfy even a mandatory provision of the Election Code."); *Bergman v. Vachata*, 347 Ill. App. 3d 339, 345-46 (2004) (reaffirming prior holding that substantial compliance can satisfy even mandatory provisions of the Election Code); *Brennan v. Kolman*, 335 Ill. App. 3d 716, 720, 781 N.E.2d 644, 647 (2002) ("substantial compliance can satisfy even a mandatory provision of the Code"); *King v. Justice Party*, 284 Ill. App. 3d 886, 890 (1996) (same); *Sakonyi v. Lindsey*, 261 Ill. App. 3d 821, 826 (1994) (same); *Panarese v. Hosty*, 104 Ill. App. 3d 627 (1982) (same); but see *Knobeloch v. Electoral Board*, 337 Ill. App. 3d 1137, 1140 (2003) ("substantial compliance [with a mandatory provision of the Election Code] is no longer sufficient").

¶ 10    Citing *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469 (1980), Objectors argue that the Electoral Board correctly determined that the certification requirement of section 7-10 of the Code is mandatory and, therefore, the doctrine of substantial compliance could not be invoked in this case. We disagree with the latter contention. As this court has previously explained: "we do not interpret *Bowe* as rejecting the doctrine of substantial compliance. Rather, in *Bowe* there was no substantial compliance, *as a matter of fact*. Thus, there was no compliance." (Emphases in original and omitted.) *Bergman v. Vachata*, 347 Ill. App. 3d 339, 346 (2004).

¶ 11    Reading the statute in its entirety, we agree with the observation of the *Madden* and *O'Connor* courts that section 7-10 of the Election Code contains *both* mandatory elements and directory provisions. We agree with Candidates that their forms were in "strict" compliance with the mandatory elements[2] and that the alleged deficiencies related to directory provisions that provided that the statement of candidacy "shall be in *substantially* the following form." (Emphasis added.) However, even assuming *arguendo* that section 7-10 taken as a whole is a mandatory statute, and applying the doctrine of substantial compliance consistent with the case law noted above, we conclude that Candidates substantially complied with section 7-10's requirements even though the notarial jurat did not contain the language that the candidate was "personally known" to the certifying officer.

----

[2]It is undisputed that all statements of candidacy included: (a) the name and address of each candidate; (b) the office each was seeking; (c) a statement that the Candidate was a qualified primary voter of the Democratic party; (d) a statement of economic interest; and (e) the request to be placed on the ballot. It was also undisputed that each Candidate "subscribed and swore to his or her statement of candidacy before an officer authorized to take acknowledgment of deeds in the State of Illinois."

¶ 12     This court has generally excused clerical errors in notarial jurats where the affiant is otherwise correctly identified. *Brennan v. Kolman*, 335 Ill. App. 3d 716, 722 (2002); *Cintuc, Inc., v. Kozubowski*, 230 Ill. App. 3d 969, 974 (1992). As we have explained: "[S]ubstantial compliance with the Election Code is acceptable when the invalidating charge concerns a technical violation." *Madden v. Schumann*, 105 Ill. App. 3d at 903. "But substantial compliance is not operative to release a candidate from compliance with the provisions intended by the legislature to guarantee a fair and honest election." *Id*. at 903-04. We believe this case falls in the category of the former. There is also authority for the proposition that the substantial compliance standard applies to *all* of the provisions of the Election Code. See *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶¶ 27, 29 (holding that the phrase "in substantially the following form" in section 7-10 "applies to all, not some, of that section's requirements" and that "substantial, rather than strict, compliance is the proper standard by which to evaluate deviations from certain mandatory provisions of the Election Code").

¶ 13     As we have previously stated "[w]e are mindful both that the provisions of the Election Code are designed to protect the integrity of the electoral process and that access to a place on the ballot is a substantial right not lightly to be denied." *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 28. Our decision here comports with important principles enunciated by the Illinois Supreme Court, which "has instructed we should 'tread cautiously when construing statutory language which restricted the people's right to endorse and nominate the candidate of their choice.' " *Id.* ¶ 23 (quoting *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997)). Our supreme court has recognized that limiting a candidate's right to run for public office necessarily restricts the voters' right to place their chosen candidate in office. *Tully v. Edgar*, 171 Ill. 2d 297, 307 (1996). The *Tully* court noted its prior opinions where it had "determined that the right to vote is implicated by legislation that restricts a candidate's effort to gain access to the ballot" and "held that the right to vote is implicated by legislation that limits the people's right to nominate candidates." *Id.*

¶ 14     We further note that our decision comports with the recent case of *Cortez v. Municipal Officers Electoral Board*, 2013 IL App (1st) 130442, in which this court addressed the identical issue as that in the instant case.[3] There, as here, the candidates used the shorter notarization form in section 7-10 instead of the longer form required for the statement of candidacy containing the phrase "who is to me personally known." The *Cortez* court concluded that the legislature did not intend that the appropriate sanction for a mistake in the use of the wrong notarization form was to strike a candidate's name from the ballot.

¶ 15     As the *Cortez* court explained: "[Section 7-10 of the Election Code] does not affirmatively state that the sanction for a discrepancy in language is the striking of the entire candidacy. Second, and most importantly, the statute does state that the 'Statement of

---

[3]We note that as of the date of filing our opinion, the *Cortez* opinion was not final and contained the following notice "THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL."

Candidacy' has to be only 'in substantially the following form.' " *Id*. ¶ 19 (quoting 10 ILCS 5/7-10 (West 2010)). The *Cortez* court cautioned that it did "not condone the actions of the [candidates in that case]." *Id.* ¶ 22. The court further stated that it believed that "people who desire to be elected to public office should be able to follow the recommended directions of the elections statute as written and provided." *Id.* Nonetheless, the court concluded that "the remedy of the Board [was] drastic, and 'absent a clearer statement by the legislature that it intended that remedy as a sanction' for an apparently inadvertent omission of language on a notarization," the court declined to construe the Election Code as requiring that the candidates' names be stricken from the ballot. *Id*. We agree with the reasoning of the *Cortez* court.

¶ 16    Objectors have additionally argued that the legislature treats the certification process for the petition sheet differently from that for the statement of candidacy because the certification of the petition sheet merely requires that the document was signed and sworn to before "an officer authorized to administer oaths in Illinois" whereas the statement of candidacy must be certified by "someone who is authorized to take acknowledgment of deeds." Based on this language, Objectors argued and the Electoral Board agreed, that the Illinois Conveyances Act (765 ILCS 5/20 (West 2010)) and the Uniform Recognition of Acknowledgments Act (765 ILCS 30/1 *et seq.* (West 2010)) expressly applied to Candidates' statement of candidacy. We disagree. These acts relate to notarization of real property and are irrelevant. Moreover, the Electoral Board correctly recognized that the phrase describing the qualifications of the individual who could certify the statement of candidacy as "someone who is authorized to take acknowledgment of deeds" could be satisfied by an individual who was a notary public. It is undisputed that each statement of candidacy was subscribed and sworn to by a notary public.

¶ 17    In sum, the decision of the Electoral Board that Candidates' statements of candidacy did not comply with the Election Code because the notarial jurat did not include language stating that the candidate who executed the statement of candidacy in the presence of the certifying officer was "personally known" to the certifying officer was incorrect. We conclude that this minor deviation did not invalidate the underlying oath where the notarial jurat was otherwise in conformance with the statute (and there are no facts indicating that the individuals who executed the statements of candidacy were, in fact, not Candidates.) The statements of candidacy were in substantial compliance with the statute. We therefore affirm the decision of the circuit court of Cook County reversing the Board's decision.

¶ 18    Circuit court affirmed; Municipal Officers Electoral Board for the City of Calumet City reversed.